IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN IMMIGRATION COUNCIL and INTERNATIONAL REFUGEE ASSISTANCE PROJECT,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Civil Action No. 1:22-cv-5312<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, seeking to compel U.S. Citizenship and Immigration Services ("USCIS"), a component of the U.S. Department of Homeland Security ("DHS"), to immediately release records relating to USCIS's adjudication of humanitarian parole applications of Afghan nationals, as well as aggregate data related to humanitarian parole applications, applications for fee waivers associated with these applications, and records relating to USCIS's processing of asylum seekers and refugees.

2. In the aftermath of the United States' military withdrawal from Afghanistan and subsequent Taliban takeover, humanitarian parole and other methods that allow Afghans to seek safety in the United States have become crucial.

1

3. Despite efforts to evacuate thousands of vulnerable Afghans after the Taliban takeover, thousands of others who helped the U.S. mission in Afghanistan, as well as their family members, could not reach the safety of the United States.[1]

4. President Biden tasked DHS to coordinate the U.S. government's efforts to assist vulnerable Afghans seeking to resettle in the United States in what became known as Operation Allies Welcome.[2]

5. Humanitarian parole thus has been a key part of DHS's efforts to bring Afghans to the United States. It allows Afghans who have not arrived at a U.S. port of entry and who may be inadmissible or ineligible for admission into the United States, to enter the country.[3]

6. These applicants for humanitarian parole–many of whom are seeking to be reunited with their families in the United States–often face grave danger under the Taliban-controlled Afghan government, and others live in tenuous situations in temporary accommodations in foreign countries or on U.S. military bases overseas while they await decisions on their applications. Such applicants often are targeted by the Taliban for their work (or the work of a family member) furthering the U.S. government efforts in Afghanistan or for their U.S. mission-aligned ideological beliefs.

7. In the nearly twelve months since the U.S. announced its intent to withdraw from Afghanistan, over 45,000 applications for humanitarian parole have been filed by Afghans in vulnerable situations. Yet, and despite President Biden's directive, reports citing agency sources

---

[1] *See, e.g.*, Miriam Jordan, *Afghans Who Bet on Fast Path to the U.S. Are Facing a Closed Door*, NEW YORK TIMES, February 16, 2022, https://www.nytimes.com/2022/02/16/us/afghan-refugees-humanitarian-parole.html.

[2] U.S. Dep't of Homeland Security, FACT SHEET ON OPERATION ALLIES WELCOME, https://www.dhs.gov/publication/fact-sheet-operation-allies-welcome (last visited June 22, 2022).

[3] U.S. Citizenship and Immigration Services, INFORMATION FOR AFGHAN NATIONALS ON REQUESTS TO USCIS FOR HUMANITARIAN PAROLE, https://www.uscis.gov/humanitarian/humanitarian-parole/information-for-afghan-nationals-on-requests-to-uscis-for-humanitarian-parole (last visited June 22, 2022).

indicate that USCIS has processed less than 2,500 of these applications, of which 2,200 have been denied.[4]

8. To inform individuals and advocates about how this slow and ineffective processing has impacted Afghan nationals, including as it relates to the high rate of rejected applicants, the International Refugee Assistance Project ("IRAP") filed a FOIA request with USCIS on October 26, 2021, and a second request jointly with the American Immigration Council (the "Council") on March 15, 2022.

9. Despite the urgency for potential beneficiaries of humanitarian parole applications, USCIS has not responded to Plaintiffs' requests. Indeed, in part due to the urgent situation of many applicants, USCIS granted expedited processing to IRAP's initial FOIA request.

10. Yet to date, IRAP and the Council have not received a single record in response to their FOIA requests.

11. Immediate disclosure of the requested records is necessary to inform humanitarian parole applicants, advocates, and the public about the agency's performance in processing humanitarian parole applications for Afghan nationals. Only with a better understanding of the current process and timelines for processing humanitarian parole applications can Afghan nationals make plans to reunify with family members and secure safety in the United States.

12. Plaintiffs bring this action under the FOIA for declaratory, injunctive, and other appropriate relief.

---

[4] Gabrielle Hays, *How humanitarian parole works, and why so many Afghan families are waiting to be reunited*, PBS NEWSHOUR, May 5, 2022, https://www.pbs.org/newshour/nation/how-humanitarian-parole-works-and-why-so-many-afghan-families-are-waiting-to-be-reunited.

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 5 U.S.C. §§ 552(a)(4)(B), (a)(6)(C)(i), (a)(6)(E)(iii). Because this action arises under FOIA against an agency of the United States, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1) because IRAP's principal place of business is in this district.

15. This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 5 U.S.C. §§ 552(a)(4)(B) and (a)(6)(E)(iii), 28 U.S.C. §§ 2201-2202 and the Federal Rules of Civil Procedure 57 and 65.

16. The Plaintiffs have exhausted any and all administrative remedies in connection with this FOIA request.

## PARTIES

17. Plaintiff American Immigration Council (the "Council") is a tax-exempt, not-for-profit educational and charitable organization under Section 501(c)(3) of the Internal Revenue Code, with its principal place of business at 1331 G Street NW, Suite 200, Washington, D.C. 20005. Founded in 1987, the Council works to increase public understanding of immigration law and policy, advocate for the fair and just administration of our immigration laws, protect the legal rights of noncitizens, and educate the public about the enduring contributions of America's immigrants. Through its research and analysis, the Council has become a leading resource for policymakers and opinion makers at the national, state, and local levels who seek to understand the power and potential of immigration and to develop policies that are based on facts rather than myths. The Council also seeks, through court action and other measures, to hold the government accountable for unlawful conduct and restrictive interpretations of the law and for failing to

ensure that the immigration laws are implemented and executed in a manner that comports with due process.

18.     Plaintiff International Refugee Assistance Project ("IRAP") is a 501(c)(3) nonprofit and nonpartisan organization, with its principal place of business at One Battery Park Plaza, 4th Floor, New York, NY 10004, that organizes law students and lawyers to develop and enforce a set of legal and human rights for refugees and displaced persons, including Afghan allies who face ongoing threats of violence because of their service to the U.S. government. IRAP is currently class counsel in litigation representing thousands of Afghan class members who have experienced delays in processing their Special Immigrant Visas.  IRAP also provides direct legal representation to hundreds of Afghans seeking safe passage to the United States and other third countries, including more than one hundred currently pending Afghan humanitarian parole applicants.  IRAP utilizes media and systemic policy advocacy, direct legal aid, and impact litigation to serve the world's most persecuted individuals and empower the next generation of human rights leaders.  IRAP maintains extensive self-help and practitioner guides on refugee and asylee processing, including guides for Afghan refugee processing and materials for the legal community to advise Afghan parolees about options for durable status such as asylum.

19.     Defendant U.S. Department of Homeland Security ("DHS") is an agency of the United States government and an agency within the meaning of 5 U.S.C. § 552(f).

20.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is a subcomponent of DHS, 8 C.F.R. § 100.1, and an agency within the meaning of 5 U.S.C. § 552(f).  USCIS has been delegated authority to administer certain provisions of the Immigration and Nationality Act. 8 C.F.R. § 100.1.

## STATEMENT OF FACTS

**I.    *Background – DHS Makes Humanitarian Parole Available for Afghan Evacuees Outside the United States.***

21.    In July 2021, President Biden announced that the U.S. military mission in Afghanistan would conclude by the end of August 2021.[5]

22.    Subsequent to the withdrawal of the U.S. military presence in Afghanistan, the Taliban entered Kabul and seized control of the Afghan elected government.[6] Data from the U.S. Department of State indicates that the United States evacuated 124,000 individuals from Afghanistan in the weeks leading up to the U.S. withdrawal, including U.S. citizens, U.S. legal permanent residents, Afghans who held or applied for Special Immigrant Visas, and Afghans who worked with or for the United States in Afghanistan, as well as their family members.[7]

23.    However, thousands of Afghans who were employed to aid U.S. efforts remain in Afghanistan and have sought to leave the country fearing retribution from the Taliban.[8]

24.    These fears are well-founded. The Office of the U.N. High Commissioner for Human Rights ("UNHCHR") received credible allegations that the Taliban carried out reprisal killings of a number of former Afghan military personnel.[9] The UNHCHR also stated that the Taliban detained and killed civilians and their family members who worked for prior administrations. *Id.*

---

[5] Joseph R. Biden, PRESIDENT OF THE UNITED STATES IN THE EAST ROOM (July 8, 2021), available at https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/07/08/remarks-by-president-biden-on-the-drawdown-of-u-s-forces-in-afghanistan/

[6] Congressional Research Service, *U.S. Military Withdrawal and Taliban Takeover in Afghanistan: Frequently Asked Questions* at 1, Sept. 17, 2021, available at https://crsreports.congress.gov/product/pdf/R/R46879.

[7] *Id.* at 22.

[8] *Id.*

[9] *Id.*

25.     As part of Operation Allies Welcome, DHS was instructed to lead and coordinate ongoing efforts across the federal government to support vulnerable Afghans, including those who worked alongside the U.S. in Afghanistan, as they safely resettle in the United States. Part of this effort includes granting humanitarian parole to Afghan nationals seeking to enter into the United States.[10]

26.     USCIS is the subcomponent of DHS that adjudicates applications for humanitarian parole.[11]

27.     USCIS instructs individuals outside the United States, including Afghan nationals, to apply for humanitarian parole by filing Form I-131, Application for a Travel Document, with USCIS.[12]

28.     Humanitarian parole allows these individuals who may be inadmissible or otherwise ineligible for admission into the United States to enter the country for a temporary period.

29.     An individual may apply for humanitarian parole on their own behalf as a self-petitioner, and a petitioner also can request humanitarian parole on behalf of another person, or a beneficiary.[13]

30.     USCIS grants parole if the applicant can demonstrate, based on all the evidence submitted and available to USCIS, that a) there are urgent humanitarian or significant public

---

[10] U.S. Department of Homeland Security, *Operation Allies Welcome*, available at https://www.dhs.gov/sites/default/files/publications/21_1110-opa-dhs-resettlement-of-at-risk-afghans.pdf.

[11] U.S. Citizenship and Immigration Services, HUMANITARIAN OR SIGNIFICANT PUBLIC BENEFIT PAROLE FOR INDIVIDUALS OUTSIDE THE UNITED STATES, https://www.uscis.gov/humanitarian/humanitarianpublicbenefitparoleindividualsoutsideUS (last visited June 22, 2022).

[12] *Id*.

[13] *Id*.

benefit reasons for the beneficiary to be in the United States; and b) the beneficiary merits a favorable exercise of discretion. *Id*.

31.  In nearly a year, over 45,000 applications for humanitarian parole had been submitted by vulnerable Afghan nationals, many of whom are in immediate danger from the Taliban and/or are seeking to reunite with their family members in the United States. Despite the assurances of the U.S. government, and based on reports citing agency sources, approximately 5% of these applications have been processed. Of this 5%, almost 88% of these processed applications have been denied.[14]

32.  In its December 2021 report to Congress, DHS stated that the vast majority of Afghan evacuees who entered the United States received humanitarian parole from U.S. Customs and Border Protection ("CBP") officers at U.S. ports of entry.[15] However, the report does not include information regarding humanitarian parole applications filed with USCIS. To Plaintiffs' knowledge, there is no such public reporting regarding data related to humanitarian parole applications filed with USCIS.

**II.   *Plaintiff IRAP's First Request for Information under the FOIA and Defendants Failure to Timely Respond.***

33.  IRAP filed the first FOIA request with USCIS on October 26, 2021 (the "October 26 Request"). A copy of IRAP's October 26 Request is attached as Exhibit A.

34.  IRAP requested the following information:

---

[14] Gabrielle Hays, *How humanitarian parole works, and why so many Afghan families are waiting to be reunited*, PBS NEWSHOUR, May 5, 2022, https://www.pbs.org/newshour/nation/how-humanitarian-parole-works-and-why-so-many-afghan-families-are-waiting-to-be-reunited.

[15] Operation Allies Welcome Afghan Evacuee Report, DEP'T OF HOMELAND SECURITY (Dec. 2021), https://www.dhs.gov/sites/default/files/2022-03/DMO-OSEM%20-%20Department%20of%20Homeland%20Security%20Operation%20Allies%20Welcome%20Afghan%20Evacuee%20Report.pdf

8

    a. Guidance, procedures, policies, directives or similar documents regarding the processing of humanitarian parole by, for, or on behalf of Afghan nationals issued since January 1, 2021; and

    b. Lesson plans, training materials, operating policies and procedures or similar documents regarding the adjudication of humanitarian parole applications in effect since January 1, 2021.

35. In its request, IRAP asked USCIS to expedite the processing for the FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) due to the urgent need to inform the public and service providers about USCIS's processing of Afghan humanitarian parole applications.

36. On October 27, 2021, USCIS confirmed receipt of the October 26 Request, and assigned it No. COW2021004410 (the "October 27 Letter"). A copy of USCIS' October 27 Letter is attached as Exhibit B.

37. USCIS's October 27 Letter also denied IRAP's request to expedite the processing of the October 26 Request.

38. IRAP appealed USCIS's denial of its request to expedite on January 24, 2022 (the "January 24 Appeal"). A copy of the January 24 Appeal is attached here as Exhibit C.

39. On February 10, 2022, USCIS notified IRAP that it granted IRAP's January 24 appeal approving the request for expedited processing (the "February 10 Decision"). A copy of USCIS' February 10 Decision is attached here as Exhibit D.

40. Despite the grant of expedited processing, USCIS has not produced records responsive to IRAP's October 26 Request.

41. Defendants' conduct violates the requirements of the FOIA and deprives IRAP the opportunity to timely inform legal representatives, advocates, and the public about the

policies and attendant delays affecting the processing of these applications.  IRAP accordingly seeks relief from this Court.

II. *Plaintiffs' Second FOIA Request and Defendants' Response*

42. On March 15, 2022, Plaintiffs IRAP and the Council, filed a request under FOIA to USCIS (the "March 15 Request").  A copy of Plaintiffs' March 15 Request is attached here as Exhibit E.  The request sought the following information:

   a. Aggregate data regarding humanitarian parole applications filed with the agency since January 1, 2020;

   b. Aggregate data regarding filing fees received by USCIS for humanitarian parole applications;

   c. Aggregate data regarding fee waiver requests associated with applications for humanitarian parole;

   d. Records pertaining to agency guidance, policies, procedures or training materials about USCIS's processing of fee waiver requests associated with humanitarian parole applications filed for Afghan nationals;

   e. Records relating to agency guidance, policies, procedures or training about USCIS's processing of asylum or refugee applications filed by Afghan nationals; and

   f. USCIS's procedures regarding video interviews of refugee or asylum applicants.

43. Plaintiffs asked USCIS to expedite the processing of the March 15 Request given the urgent need to inform the public about the delays in processing these applications.

44. In a letter dated March 16, 2022, USCIS assigned control number COW2022001403 to Plaintiffs' March 15 Request and requested that Plaintiffs clarify their

10

request (the "March 16 Letter"). A copy of USCIS' March 16 Letter is attached here as Exhibit F.

45. On March 30, 2022, Plaintiffs responded to USCIS's request to narrow the scope of the request by clarifying the dates of responsive documents sought. Plaintiffs also suggested agency subcomponents where responsive documents may be found (the "March 30 Letter"). A copy of Plaintiffs' March 30 Letter is attached here as Exhibit G.

46. That same day, USCIS sent a letter to Plaintiffs acknowledging receipt of the March 15 Request and denying Plaintiffs' request for expedited processing (the "March 30 Denial"). A copy of USCIS' March 30 Denial is attached here as Exhibit H.

47. On April 20, 2022, Plaintiffs filed an administrative appeal of USCIS's determination to deny expedited processing of the March 15 Request with the USCIS FOIA Appeals Office (the "April 20 Appeal"). A copy of Plaintiffs' April 20 Appeal is attached here as Exhibit I.

48. USCIS has not responded to the Plaintiffs' appeal.

49. Defendants failed to provide Plaintiffs with the required response within the times prescribed by the FOIA. *See* 5 U.S.C. § 552(a)(6)(B). Plaintiffs' request remains pending and USCIS has failed to make the legally required determination on the request or produce responsive records.

50. Defendants' conduct violates the requirements of the FOIA and deprives Plaintiffs the opportunity to timely inform legal representatives, advocates, and the public about the delays affecting the processing of these applications. Plaintiffs accordingly seek relief from this Court.

## CLAIM FOR RELIEF

### FIRST CAUSE OF ACTION
### (All Plaintiffs v. Defendants)

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Conduct a Reasonable Search.**

51. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 50 above.

52. Defendants have violated their obligation under the FOIA by failing to make a reasonable effort to search for records sought by Plaintiffs' requests. 5 U.S.C. § 552(a)(6)(A).

### SECOND CAUSE OF ACTION
### (Plaintiff IRAP v. Defendants)

**Violation of the Freedom of Information Act for Failure to Respond within the Time Required**

53. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 41 above.

54. Under the FOIA, the Defendants were required to respond to IRAP's October 26, 2021, FOIA request and to notify IRAP of USCIS's determination within thirty days of receiving the request. 5 U.S.C. § 552(a)(6)(A).

55. Additionally, after USCIS granted IRAP's request for expedited processing on February 10, 2022, USCIS was required to process IRAP's request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

56. The agency failed to provide a response as required by the law, which amounts to a violation of the FOIA.

## THIRD CAUSE OF ACTION
### (Plaintiff IRAP v. Defendants)

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Disclose Responsive Records**

57. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 41 above.

58. Defendants have failed to produce any records responsive to IRAP's October 26, 2021, request.

59. Defendants are obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to IRAP'S October 26 FOIA request.

60. The Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

61. Defendants' failure to disclose all responsive records violates their statutory obligations to make requested records "promptly available to the public."  5 U.S.C. § 552(a).

62. Additionally, after USCIS granted IRAP's request for expedited processing on February 10, 2022, USCIS was required to process Plaintiff IRAP's request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii).

## FOURTH CAUSE OF ACTION
### (All Plaintiffs v. Defendants)

**Violation of the Freedom of Information Act for Failure to Respond within the Time Required**

63. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 32, 42-50 above.

64. Under the FOIA, the Defendants were required to respond to Plaintiffs' March 15, 2022, FOIA request and to notify Plaintiffs of USCIS's determination within thirty days of receiving the request.  5 U.S.C. § 552(a)(6)(A).

65. The agency failed to provide a response as required by the law, which amounts to a violation of the FOIA.

66. Defendants' failure to make the requisite determination and to communicate it to the Plaintiffs violates the FOIA.  5 U.S.C. § 552(a)(6)(E)(iii).

**FIFTH CAUSE OF ACTION**
**(All Plaintiffs v. Defendants)**

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Disclose Responsive Records**

67. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 32, 42-50 above.

68. Defendants have failed to produce any records responsive to Plaintiffs' March 15, 2022, FOIA request.

69. Defendants are obligated under 5 U.S.C. § 552(a)(3) to promptly produce records responsive to the Plaintiffs' FOIA request.

70. The Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendants' failure to disclose them.

71. Defendants' failure to disclose all responsive records violates their statutory obligations to make requested records "promptly available to the public."  5 U.S.C. § 552(a).

## SIXTH CAUSE OF ACTION
### (All Plaintiffs v. Defendants)

**Violation of the Freedom of Information Act, 5 U.S.C. § 552, for Failure to Respond to Plaintiffs' Appeal of USCIS's Decision to Deny Expedited Processing**

72. The Plaintiffs hereby incorporate, as fully set forth herein, each and every allegation contained in paragraphs 1– 32, 42-50 above.

73. Under the FOIA, Defendants were required to respond to Plaintiffs' April 20, 2022, administrative appeal of USCIS's decision to deny Plaintiffs' request for expedited processing within 20 days of receipt of such appeal.  5 U.S.C. § 552(a)(6)(A)(ii).

74. The Defendants have failed to make a determination with respect to Plaintiffs' administrative appeal, which constitutes a violation of the FOIA.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray for judgment against Defendants as follows:

a. Order Defendants to expeditiously conduct an adequate search for all records responsive to the Plaintiffs' FOIA requests in accordance with 5 U.S.C. § 552(a)(3)(C);

b. Declare that Defendants' failures to timely produce the required determination applicable to the Plaintiff IRAP's October 26, 2021, request and Plaintiffs' March 15, 2022, request violate FOIA, 5 U.S.C. § 552(a)(6)(A)(i);

c. Declare that Defendants' failure to disclose the records responsive to the Plaintiffs' requests violates FOIA, 5 U.S.C. § 552(a)(3)(A), as well as the regulations promulgated thereunder;

      d.      Order Defendants to process responsive non-exempt records in their entirety, to disclose the requested records in their entirety, and to make the records available to Plaintiffs within thirty (30) days, and enjoin Defendants from improperly withholding records;

      e.      Award the Plaintiffs reasonable attorneys' fees and other litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable statute or regulation; and

      f.      Grant such other relief as the Court may deem just, equitable, and appropriate.

Dated: June 23, 2022

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*
Jeffrey L. Kessler
Jeffrey J. Amato
Kerry C. Donovan
Jay Wexler
Gabi Wolk
Malik Williams
200 Park Avenue
New York, NY 10166-4193
Telephone: 212-294-6700
Facsimile: 212-294-4700
JKessler@winston.com
JAmato@winston.com
KCDonovan@winston.com
JWexler@winston.com
GWolk@winston.com
MWWilliams@winston.com

AMERICAN IMMIGRATION COUNCIL

By: */s/ Emily Creighton*
Emily Creighton *(pro hac forthcoming)*
Raul Pinto
1331 G St. NW, Suite 200
Washington D.C., 20005
Telephone: 202-507-7500
Ecreighton@immcouncil.org
Rpinto@immcouncil.org